## Moore v. Grossman

*Larry W. Miller Jr.,* for plaintiff.
*J. Peter Landis,* for defendant.

SPRECHER, *J.,* January 27, 2010—Defendant appeals the decision and verdict of this court which found in favor of plaintiff and against defendant in Count I for breach of contract with no damages, in favor of defendant and against plaintiff in Count II for unfair trade practices, in favor of plaintiff and against defendant in Count III for replevin in the amount of $2,781.97, and in favor of plaintiff and against defendant on defendant's counterclaim. This opinion is filed pursuant to Pa.R.A.P. 1925.

## FACTS

Plaintiff, Daniel Moore, is an architectural designer. Defendant, Damon M. Grossman, does business as "D. M. Grossman Remodeling" and provides remodeling services. Plaintiff wanted, inter alia, to enlarge a bathroom in his residence. On November 13, 2007, the parties entered into an agreement for defendant to provide the remodeling services for a total price of $6,843.94, payable in three installments. The first payment of $3,421.97 was due three days prior to the start of the job. The second payment of $1,710.99 was due upon request, and the third and final payment of $1,710.98 was due at the completion of the job. Each party was to supply certain necessary items to complete the project.

Defendant wrote the agreement which is on his letterhead. Defendant's services, including the fact that he provides "24-hour emergency services," are listed on the

letterhead. Included on the printed stationery is the statement "We accept all major credit cards."

On November 21, 2007, the Wednesday before Thanksgiving, defendant's wife, Gwen Grossman, called plaintiff and stated that she needed the first payment that was due three days prior to the commencement of the work because defendant was starting the work on Monday, November 26, 2007. Plaintiff went to defendant's business and made the payment with a credit card. Ms. Grossman testified that the credit card payment was deposited in defendant's account on November 26, 2007.

As part of the remodeling services, defendant was to replace the basement door. Defendant informed plaintiff that he was going to do this first to have easier access to the residence. The basement door had been chewed by animals at the bottom. Plaintiff had secured the door by screwing a large three-quarter inch plywood board over the hole and into the door frame so the door was no longer usable. Plaintiff unlocked the door on November 26, 2007, for defendant to have access to the residence.

Defendant did not show up for work on November 26, 2007. Plaintiff called defendant to find out why he had not started the renovations. Defendant told him that he had taken care of emergencies and that he would start the work on Wednesday, November 28, 2007. Defendant, however, testified that he had not started the work on November 26, 2007, because he had been waiting for the money from plaintiff's credit card account to be deposited into his account. He had proceeded to work when the money was deposited.

On Wednesday, November 28, 2007, defendant and three other employees started the demolition work on the bathroom. They arrived between 7 a.m. and 7:30 a.m. They tore out the bath, the shower, the toilet, the sink, two walls, and reattached wires in the ceiling. They finished working sometime between 3 p.m. to 3:30 p.m. Defendant testified that he had not removed the basement door because he had run out of time. Defendant ran out of room in the dump truck, so he did not remove the flooring and drywall in the bathroom on that day.

When plaintiff came home on November 28, 2007, the odor of sewer gas permeated the entire house. The drains were not capped. The electricity was not functioning in the front quarter of the residence. Plaintiff hired others to cap the wires and to finish cutting pipes and capping them. Defendant and his employees, however, testified that they had not left any wires exposed when they had completed work on November 28, 2007. Plaintiff testified that defendant had, in fact, taken the plywood off the basement door. The door remained hanging with a big hole in it so the residence was no longer secure, and there was additional work that could have been done even without blueprints.

Defendant did not return to the residence the rest of the week. He claimed that he had a water emergency on November 29, 2007. He did not return on November 30, 2007, because he was too tired from handling the emergency. He did not communicate with plaintiff during this period.

Defendant had another water emergency on Monday, December 3, 2007. Ms. Grossman called around noon

on that day to tell plaintiff that defendant would not be there that day and probably not on the following day. She further informed plaintiff that she would have to call back about when the work could be done. On December 4, 2007, plaintiff spoke again to Ms. Grossman and told her that defendant was fired.

Defendant testified that he had been willing to proceed on December 4, 2007, if plaintiff had supplied him with a blueprint and the necessary items that plaintiff was supposed to supply. Plaintiff had made two handwritten drawings. One drawing showed the demolition plan and the other showed the finished condition of the bathroom after the remodeling was completed. Plaintiff considered these drawings to be blueprints. Defendant testified that these drawings were not "real blueprints" and were insufficient to complete the remodeling portion of the project. Defendant had wanted a blueprint with precise measurements. However, even without a blueprint, defendant admitted that he would have had enough work at the residence for at least one-half day. There was no testimony that plaintiff had refused to provide defendant with a more detailed blueprint. Defendant further stated that he could not guarantee a specific completion date because he operates a 24-hour emergency service. Defendant did not purchase anything for the project except 2 x 4s.

Plaintiff testified that he wanted the money from the first installment returned to him minus the money that was owed to defendant for the work that was done on November 28, 2007. Defendant contended that he was unable to perform the work due to plaintiff's conduct.

Based on the foregoing evidence, this court found that plaintiff was entitled to get the return of his deposit minus defendant's labor costs. This court entered the decision which defendant now appeals.

## ISSUES

Defendant raises six issues in his concise statement of errors complained of on appeal filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(b):

(1) Whether this court erred in finding in favor of plaintiff and against defendant on Count III of plaintiff's complaint for replevin inasmuch as replevin is an action to regain possession of goods and chattels from a defendant and money may only be the proper subject of replevin if it is easily susceptible to ready and positive identification. The evidence presented during trial failed to establish the existence of property that would be the proper subject of a replevin action.

(2) Whether this court erred in awarding monetary damages in favor of plaintiff and against defendant on Count III for replevin inasmuch as the primary purpose of an action in replevin is to recover property in specie and not to recover payments made in a breach of contract claim. The evidence presented during trial failed to establish a basis for an award of damages in a replevin action.

(3) Whether this court erred in finding in favor of plaintiff and against defendant on Count III for replevin inasmuch as the evidence presented at trial established that plaintiff sought relief for an alleged breach of con-

tract and the recovery sought in Count III would thus be barred by the "gist of the action" doctrine.

(4) Whether this court erred in finding in favor of plaintiff and against defendant on Count III in the amount of $2,781.97 inasmuch as plaintiff's evidence failed to establish a proper measure of damages and was otherwise insufficient to support an award of damages in the aforesaid amount. This court's award of damages was thus based upon speculation and conjecture.

(5) Whether this court erred in finding in favor of plaintiff and against defendant in the amount of $2,781.97 inasmuch as the evidence presented during trial did not establish conduct on the part of defendant that would amount to breach of contract and/or wrongful taking or detention of property.

(6) Whether this court erred in finding in favor of plaintiff and against defendant in the amount of $2,781.97 inasmuch as the evidence presented during trial established that plaintiff breached the parties' contract by: (a) firing defendant and preventing defendant from completing performance; (b) failing to supply materials necessary to allow defendant to complete performance; (c) failing to provide blueprints to defendant; and (d) failing to allow defendant a reasonable time to complete performance.

## DISCUSSION

This court shall address defendant's first two issues together because they are interrelated and concern the validity of awarding damages under a count for replevin. These issues are without merit.

Historically, replevin is an action undertaken to regain possession of goods and chattels from the defendant. However, money may be the proper subject of a replevin action if it is easily susceptible to ready and positive identification. It is fundamental that the defendant be in actual or constructive possession of the property which is the subject of the action. *Commonwealth v. Dean,* 245 Pa. Super. 322, 369 A.2d 423 (1976).

Plaintiff gave defendant a down payment for defendant's services. Defendant did not perform according to the agreement, so plaintiff requested the return of his payment of $3,421.97. The amount of money is easily identifiable. Defendant received the money and has it in his possession. Defendant refused to return the money even though he did not earn it. Therefore, in the case sub judice, plaintiff is entitled to the return of his payment. Defendant retained it under false pretenses. Defendant did not do what he was obligated to do in order to keep the payment. For these reasons, this court found that plaintiff established a cause of action in replevin.

Defendant's third issue is that replevin is barred by the "gist of the action" doctrine. For the following reasons, this issue is without merit.

This is the first time that defendant has raised this issue. He did not raise it by preliminary objection or in his answer. In essence, defendant waived the issue prior to trial. Assuming arguendo that defendant has not waived the issue, this court finds that plaintiff elected to proceed on Count III only of his complaint and dropped the breach of contract claim in which he sought a larger amount of damages. This court specifically asked plaintiff what

damages were being sought. Transcript, 17. Plaintiff replied that he wanted the return of his payment less the cost of services rendered. Transcript, 18. Therefore, plaintiff proceeded to trial only on the replevin action. Defendant did not object at trial; thus, this defense is waived. Defendant cannot have it both ways. Had he successfully objected at any time to the replevin action, certainly plaintiff would not have withdrawn Counts I and II.

Defendant's fourth issue is that this court erred in awarding damages in the amount of $2,781.97 because plaintiff's evidence failed to establish a proper measure of damages so the award was based upon speculation and conjecture. This issue is meritless.

This court awarded plaintiff the return of his payment from defendant less the amount owed to defendant for the work done on November 26, 2007, and the cost of 2 x 4s. The award was based on the initial payment of $3,421.97 minus these expenses. Therefore, this court did not engage in any speculation concerning the damages of $3,421.97. Giving defendant the benefit of the doubt, this court deducted labor and expenses of $640 for defendant in arriving at the award of $2,781.97.

This court shall address defendant's fifth and sixth issues together because they concern the issue of whether or not defendant breached the contract or wrongfully detained plaintiff's property. These issues are without merit.

It is clear that defendant breached the contract. First, defendant requested that plaintiff make the first payment

on November 21, 2007 because he wanted to start the work on November 26, 2007. Thus, defendant determined when the agreement commenced. There was contradictory testimony given by defendant and Ms. Grossman concerning the reasons why work did not start on November 26, 2007. Ms. Grossman testified that defendant had emergency services that he had to perform. Defendant stated that he was waiting for the money to be deposited into his account by the credit card company. Neither reason is valid for a delay under the agreement.

A basic tenet of contract law is that when the language of a contract is clear and unambiguous its meaning must be determined by an examination of the content of the agreement itself. The court must construe the agreement only as written and may not modify the plain meaning under the guise of interpretation. *Little v. Little,* 441 Pa. Super. 185, 657 A.2d 12 (1995).

Defendant advertises on his letterhead that he provides 24-hour emergency services. Defendant does not state in the agreement itself that emergency services postpone the commencement or interrupt the completion of a job. Thus, defendant had an obligation to start on November 26, 2007. If defendant was unable to handle the two jobs, then he should not have taken the emergency work. Plaintiff paid the money at defendant's request so defendant could begin on November 26, 2007. Plaintiff relied on defendant's promise to perform and left the house unsecured to allow defendant access into the dwelling. Plaintiff performed his part of the bargain.

Defendant also advertised that he accepts all major credit cards. Plaintiff's payment was approved by the credit card company so defendant knew that he would receive the funds from the credit company. He did not have to wait for the actual posting of the funds. Even assuming arguendo that defendant had the right to wait for the deposit, the funds were deposited in his account on the day that work was to start. Defendant did not start the work on that day, so he defaulted on the agreement.

Defendant did not return to work on the next four business days. Defendant, by his own admission, had work to do that did not require a blueprint with specifications. Defendant did not continue the work in a timely manner. If, as defendant contends, the door and the remaining demolition could have been completed in one-half day, then four whole days was more than a reasonable amount of time to finish the work in a timely manner. Defendant did not attempt the work at all.

Defendant's contention that plaintiff breached the contract by firing him is frivolous. Plaintiff fired defendant only after defendant breached the contract by commencing the project late and not returning in a timely manner to finish the job. Out of seven business days, defendant appeared for work only one day. According to defendant the job should have taken two to three weeks to complete. After more than one week, defendant had not finished the final demolition work. Thus, plaintiff had allowed defendant a reasonable time to complete his work before he fired him.

In accordance with the foregoing opinion, this court submits that its decision should be affirmed and defendant's appeal dismissed.